# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dontay St. James, | Civil No. 05-2348 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| City of Minneapolis, Minnesota;<br>Minneapolis Police Department,<br>Officer Mark Suchta, in his individual<br>and official capacities; Sgt. John Rouner;<br>Sgt. Michael Keefe; Sgt. Bruce Folkens,<br>in his individual and official capacities; and<br>John Does 1-5, | |
| Defendants. | |

_____

Jill Clark, Esq., Jill Clark, PA, counsel for Plaintiffs.

C. Lynne Fundingsland, Esq., and Gregory P. Sautter, Esq., Minneapolis City Attorney's Office, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Partial Summary Judgment brought by Defendants City of Minneapolis, Minnesota; Minneapolis Police Department; Officer Mark Suchta; and Sergeants John Rouner, Michael Keefe, and Bruce Folkens (collectively, "Defendants").[1]  In his First Amended Complaint, Plaintiff Dontay

---

[1]     St. James also alleges claims against John Does 1-5, although Defendants do not address those claims.  The true identity of those defendants was not uncovered during discovery; accordingly, the Court dismisses the claims against John Does 1-5 with

(Footnote Continued on Next Page)

St. James asserts two causes of action against Defendants relating to a police shooting that occurred on September 19, 2004. Specifically, St. James asserts a 42 U.S.C. § 1983 claim based on various constitutional theories, including a claim for excessive force, and a state law claim for malicious prosecution. Defendants now move for partial summary judgment on all of St. James' claims except his excessive force claim as it relates to Suchta. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

The background of this case was initially discussed in the Court's June 13, 2006 Order. In the early morning hours of September 19, 2004, St. James and several people attended a party in his apartment building. At some point during the party, two guests began fighting, and the fight moved outside. St. James went to his apartment on the third floor of the building to retrieve his gun. According to St. James, he intended to use the gun to break up the fight because he was concerned about his friends' safety. A neighbor called 911 when she saw an African-American male wearing a white shirt pointing the gun towards the crowd. That man was presumably St. James.

Although Suchta and Conway were not officially dispatched to respond to the neighbor's call and were on their way to respond to a different incident, they responded to

---

(Footnote Continued From Previous Page)
prejudice. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (discussing when dismissal of claims against John and Jane Does is appropriate).

(Footnote Continued on Next Page)

the neighbor's 911 call.  When the persons at the party saw the police coming, someone yelled "police," and the crowd dispersed.  When St. James saw the police coming, he ran into the apartment building towards his apartment.  Suchta and Conway pursued him. St. James reached his apartment door and eventually unlocked it and went inside.  At some point, Suchta shot St. James through the door four times.  After he was shot, St. James threw his gun across the room and then opened the door to let the police officers into his apartment.  There are factual disputes concerning, among other things, what Suchta and Conway saw when they arrived at the scene; whether Suchta and Conway ever saw St. James holding a gun or pointing a gun at anyone; what the exact sequence of events were surrounding Suchta and Conway's pursuit of St. James into the apartment building; whether St. James was in the doorway with the door completely closed or partially open when Suchta took his first shot; and the location of St. James' gun after Suchta and Conway entered the apartment building and after St. James opened his apartment door.

After Suchta shot St. James, Conway administered first aid to St. James, while Suchta called for medical help.  St. James was taken to Hennepin County Medical Center ("HCMC") to receive treatment.  As part of standard protocol, Suchta was also taken to HCMC for drug testing.  Suchta's tests came back negative, and HCMC destroyed his urine sample.  At approximately 6 a.m. on September 19, 2004, St. James was released

(Footnote Continued From Previous Page)

from HCMC, and Officer Turner took St. James to the Adult Detention Center for booking.

After the shooting, various Minneapolis City police officers took part in investigating the shooting. Gwen Gunter was the first officer to arrive at the scene after the shooting. When she arrived, she placed another officer in charge of watching St. James' gun, and she escorted Suchta out of the apartment building. Rouner was tasked with supervising Suchta, and Rouner also spoke to Conway about the incident after Conway left the apartment building. Eventually, both Conway and Suchta were assigned escorts and separated. At some point, Folkens arrived at the scene, and he spoke with Rouner about the incident. Folkens then went into the apartment building and spoke with Gunter about the incident. After St. James was taken to the hospital, Folkens secured the scene and went to Room 108, which refers to the Minneapolis Police Department's Homicide offices, to draft a search warrant. Folkens later returned to the scene to complete his forensics investigation, with the aid of Mike Calistro of the Minneapolis Police Department Lab. At some point, Keefe was called to Room 108 to investigate the shooting incident. Over the course of the morning, Keefe and his partner interviewed Conway, Suchta, and three other civilian witnesses about the incident. During that same time, Suchta met with an attorney, and Keefe and others interviewed Suchta about the incident. There are factual disputes concerning the exact sequence of events surrounding the investigation of the incident, how witnesses were interviewed, the length of time witnesses were interviewed, and who was present during the interviews.

4

On September 20, 2004, St. James was officially charged with a felony complaint for second degree assault and possession of a handgun without a permit.  Later, the complaint was amended to include a charge of first-degree assault.  After several motions, the case was eventually tried to a jury.  On September 27, 205, after six days of testimony, a jury returned a verdict of not guilty on all three counts.

## DISCUSSION

### I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary

judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Section 1983 Claim (Count I)

Section 1983 prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983.  When bringing a § 1983 claim, a plaintiff must establish (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 931 (1982).  In Count I of the First Amended Complaint, St. James alleges a § 1983 claim based on different theories of constitutional violations as applied to different groups of Defendants.[2]  The Court will consider each in turn.

### A.    Stand-Alone Claim Against Suchta

St. James asserts that Suchta[3] alone violated his constitutional rights under two

---

[2]      St. James' Amended Complaint is not a model of clarity.  In response to the Court's questions at the motion hearing, St. James described several constitutional theories to support his § 1983 claim.  This Order is organized based on those theories.

[3]      St. James asserts his § 1983 claim against Suchta both in his individual and official capacities. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (explaining why a plaintiff sues a defendant in his or her individual capacity).  A § 1983 suit against an employee in his or her official capacity is deemed to be a suit against the employer only, which in this case is the City of Minneapolis and the Minneapolis Police Department

(Footnote Continued on Next Page)

6

theories—substantive due process and excessive force.  With respect to the substantive

due process claim, Suchta asserts that he is entitled to summary judgment on that claim

because he is protected by the defense of qualified immunity.  *See Johnson,* 172 F.3d at

535 (explaining that the defense of qualified immunity is only available to government

employees sued in their individual capacities).  Qualified immunity shields government

officials as well as private individuals from civil liability under § 1983.  *Wilson v. Layne*,

526 U.S. 603, 614 (1999).  A defendant is shielded from civil liability if it is shown that

his or her "conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  Qualified immunity is a question of law to be decided by the district court.

*Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004).

On a motion for summary judgment, the Court employs a three-part test to

determine whether qualified immunity exists.  *Goff v. Bise*, 173 F.3d 1068, 1072 (8th

Cir. 1999).  First, the plaintiff must assert a violation of a constitutional right.  *Id*.

Second, the alleged right must be clearly established.  *Id*.  Third, taking the facts in the

light most favorable to the plaintiff, there must be no genuine issues of material fact as to

whether a reasonable official would have known that the alleged action violated the

_____

(Footnote Continued From Previous Page)
(collectively, the "City").  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535
(8th Cir. 1999).  The Court will address the merits of St. James' claim against the City
below.

plaintiff's clearly established rights.  *Id.*  If the Court determines that the facts, viewed in the light most favorable to the injured party, do not establish a violation of a constitutional right, no further inquiry is necessary.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'"  *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Using these standards, the Court addresses St. James' substantive due process claim against Suchta.

To establish a substantive due process violation, St. James must show that Suchta's conduct:  (1) was "conscience shocking" and (2) violated "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (quotations omitted).

St. James bases his substantive due process claim against Suchta on what he describes as Suchta's "cowboy tactics."  According to St. James, Suchta engaged in such tactics when he, among other things, raced to the apartment building without being officially dispatched, did not conceal his weapon, shot St. James within approximately thirty seconds after arriving to the scene, threatened to shoot St. James and another bystander after already shooting St. James through the doorway, gave the ambulance dispatcher the wrong address of the apartment building, and exhibited behavior similar to a "steroid-induced rage."  In response, Suchta asserts that a careful review of the record does not support St. James' allegations.  Instead, he contends that St. James is merely

making unsupported allegations that have no basis in fact.

To support his substantive due process claim, Suchta cites one case, *Moran v. Clarke*, 296 F.3d 638 (8th Cir. 2002). In that case, the plaintiff, a police officer, brought a § 1983 substantive due process claim against his employer and fellow police officers after the plaintiff was arrested based on his alleged misconduct in making an arrest. *Moran*, 296 F.3d at 641. The Eighth Circuit Court of Appeals discussed the severity of conduct necessary to establish a substantive due process violation and noted that the district court in *Moran* had improperly "wrapped the malicious prosecution claim and the section 1983 claim together." *Moran*, 296 F.3d at 643 n.3, 645-47. The Eighth Circuit also reiterated the principle that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate for that provision, not under a substantive due process analysis. *Id*. at 646; *see also U.S. v. Lanier*, 520 U.S. 259, 271 n.7 (1997).

Unlike in *Moran* where the plaintiff alleged only one constitutional basis for his § 1983 claim, here St. James has alleged two constitutional theories—substantive due process and excessive force—that are based on the same underlying facts to support his stand-alone § 1983 claim against Suchta. It is true that St. James attempts to differentiate his substantive due process from his excessive force claim by asserting that the substantive due process claim reaches more conduct than excessive force, such as Suchta's alleged steroid use and his "meltdown" after the shooting. (St. James Opp'n at 28.) Viewing these allegations in the light most favorable to St. James, however, the

Court finds that the record does not support those specific allegations.  Therefore, the
same underlying facts support both St. James' excessive force and substantive due
process claims.  Given this, the Court need not further address St. James' substantive due
process claim because the Fourth Amendment covers his claim for excessive force.[4]  *See*
*Moran*, 296 F.3d at 646.  Accordingly, summary judgment is appropriate on this claim.

### B.      Joint Claim Against Rouner, Folkens, and Suchta

St. James asserts that Rouner, Folkens, and Suchta[5] (collectively, the "Officer
Defendants") violated his constitutional rights under two theories—failure to conduct a
neutral investigation and a conspiracy to exclude exculpatory evidence, both which

---

[4]      "In addressing an excessive force claim brought under § 1983, analysis begins by
identifying the specific constitutional right allegedly infringed by the challenged
application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "[T]he two primary
sources of constitutional protection against physically abusive governmental conduct" are
the Fourth and Eighth Amendments.  *Id*.  The Fourth Amendment's prohibition against
unreasonable seizures of the person applies to excessive-force claims that arise in the
context of an arrest or a stop of a free citizen, and the Eighth Amendment's ban on cruel
and unusual punishment applies to excessive force claims brought by convicted criminals
serving their sentences.  *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000).  In not
moving for summary judgment on the excessive force claim against him, Suchta concedes
that there are genuine issues of material fact concerning St. James' excessive force claim.

[5]      If a complaint does not specifically name a defendant in his individual capacity, it
is presumed that he or she is sued only in his official capacity because "[a] suit against a
public official in his individual capacity requires that the public official be named in his
personal capacity as an individual."  *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*,
161 F.3d 1178, 1182 (8th Cir. 1998).  Here, St. James does not name Keefe in his
individual capacity.  Therefore, St. James' claims against Keefe, like his other official
capacity claims against Suchta, Rouner, and Folken, are redundant of his claims against
the City and will be dismissed for that reason.  *Id*.

furthered the malicious prosecution of St. James.  With respect to these claims, the

Officer Defendants assert that they are entitled to summary judgment because they are

protected by the defense of qualified immunity.[6]  Using the standard discussed above, the

Court will analyze each in turn.

### 1.     Neutral Investigation

Relying primarily on *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999), St. James

alleges that the Officer Defendants did not have probable cause to arrest him because they

did not conduct a sufficiently thorough or neutral investigation, which eventually led to

his malicious prosecution.[7]  St. James acknowledges that a malicious prosecution claim,

by itself, is not actionable under § 1983.  Rather, a plaintiff asserting a malicious

prosecution claim under § 1983 must demonstrate a defendant's conduct infringed upon

---

[6]     To the extent that St. James claims that any officer committed perjury in the criminal proceedings, the Officer Defendants also assert that they are entitled to absolute immunity for their trial testimony.  (Defs' Mem. at 20-21).  St. James does not contest this argument and does not appear to be basing any of his claims on any theory that the Officer Defendants gave false testimony at trial.

[7]     At the motion hearing, St. James admitted that he was not sure how this theory should be analyzed, and he asserts that it could be analyzed as an equal protection or possibly due process claim.  He cites several cases from several circuits to support his theory, but he primarily relied, in his opposition and at the motion hearing, on *Kuehl*.  The Court has reviewed those cases, together with the cases St. James submitted after the motion hearing, and concludes that the standard articulated in *Kuehl* is the most appropriate way to analyze St. James' claim based on lack of a neutral investigation.  *See, e.g., Stepnes v. Tennessen*, Civ. No. 04-68 (JNE/JSM), 2006 WL 2375645 at * 5 n.11, (D. Minn. Aug. 16, 2006) (discussing standard under which to analyze neutral investigation claim).

one of the plaintiff's constitutional rights.  *Jenkins v. County of Hennepin, Minn.,* Civ.

No. 06-3625 (RHK/AJB), 2007 WL 2287840 at * 3 (D. Minn. Aug. 3, 2007).

"The Fourth Amendment right of citizens not to be arrested without probable cause

is . . . clearly established."  *Kuehl*, 173 F.3d at 649.  "[L]aw enforcement officers have a

duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in

the absence of exigent circumstances and so long as law enforcement would not be

unduly hampered if the agents wait to obtain more facts before seeking to arrest."  *Id*. at

650 (quotations omitted).  An arrest is not supported by probable cause when a "minimal

further investigation" would have exonerated the suspect.  *Id*.  However, law enforcement

officers are not required to conduct "mini-trials" before making an arrest.  *Id*.  "Probable

cause exists if the totality of facts based on reasonably trustworthy information would

justify a prudent person in believing the individual arrested had committed an offense."

*Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir.2005) (quotations omitted).  When

determining whether an arrest was supported by probable cause, a court must assess the

facts as a whole at the time of the arrest and keep in mind that the determination of

whether probable cause exists is not an exact science.  *See id*.  The court must consider

the weight of all the evidence—not merely the sufficiency of the incriminating evidence.

*Kuehl*, 173 F.3d at 650.

St. James argues that the Officer Defendants conducted a

protect-your-own-investigation, as opposed to a neutral investigation, in order to protect

Suchta and the City from civil liability.  To support this theory that he was arrested

12

without probable cause, St. James points out that Keefe and Folkens decided to book
St. James at 6 a.m. after the shooting without taking into account the discrepancies of the
accounts between the civilian witnesses and officer witnesses.  Moreover, St. James
asserts that the Officer Defendants failed to reasonably investigate the scene, including
analyzing any forensic evidence such as the angle of the shots through the door, to
determine the conditions under which Suchta shot St. James.  And, St. James asserts that
Suchta worked with other officers, including Keefe, Folkens, and Rouner, to make sure
his version of events supported a theory that he had a "clean shot" of St. James.

The Officer Defendants respond that they followed standard procedure after the
shooting in that they conducted an appropriate and neutral investigation of the incident
before arresting St. James.  They deny discussing their statements with each other prior to
giving them to the investigating officers, and they assert that they followed the City's
Critical Incident Policy in conducting their investigation.

Viewing the evidence in the light most favorable to St. James—including the
civilian witness statements concerning the incident and the dearth of forensic analysis of
the shooting scene—the Court concludes that there are genuine issues of material fact
with respect to whether minimal further investigation would have exonerated St. James or
whether a reasonable officer would have known that St. James' arrest violated his clearly
established right to be not to be arrested without probable cause.  Accordingly, the Officer
Defendants' motion for summary judgment with respect to qualified immunity on
St. James' neutral investigation claim is denied.

### 2.    Conspiracy

St. James asserts that the Officer Defendants conspired to violate his constitutional rights, purportedly pursuant to 42 U.S.C. § 1983.  (Pl. Opp'n Mem. at 28; Am. Compl. ¶ 48.)  The Officer Defendants interpret this allegation as an allegation under 42 U.S.C. § 1985(3), and they analyze this claim under that standard, without explaining why they believe it should be analyzed under that standard.  (Defs' Mem. at 19.)  This disconnect, however, is immaterial because the Court finds that St. James has not set forth sufficient evidence to support his claim for conspiracy under § 1983.

In order to prevail on a § 1983 civil conspiracy claim, a plaintiff must show, "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff."  *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).  Moreover, a plaintiff must prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.  *Id*.  To advance past the summary judgment stage, St. James must allege with particularity and specifically demonstrate material facts that the Officer Defendants reached an agreement.  *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 685 (8th Cir. 1995).

Viewing the evidence in the light most favorable to St. James, the Court finds that he has presented no specific material facts, circumstantial or otherwise, that the Officer Defendants formed an agreement to violate his constitutional rights.  The Officer Defendants may have jointly pursued their investigation based on a belief that St. James was guilty or

with the motivation to protect Suchta, but those possible reasons, even if true, do not by themselves constitute an unlawful conspiracy.  *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006).  Without more, summary judgment is appropriate on this claim.

### C.      Claim Against the City

Under §1983, a municipality cannot be held liable on a theory of respondeat superior merely because it employs a tortfeasor.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  But a municipality may be liable for harm caused by the execution of an official policy or custom that deprives an individual of his or her constitutional rights.  *Id*.  For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation."  *Monell*, 436 U.S. at 691.  An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy.  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).  Alternatively, a custom is demonstrated by:  (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the

15

custom was the moving force behind the constitutional violation. *Id.*

St. James asserts that the City should be held liable under *Monell* because it had "a custom of arresting/booking *victims* of police shootings, until enough evidence could be gathered to charge *them* with a crime." (St. James' Opp'n at 32-33 (emphasis in original).) St. James contends that this custom caused the City's officers (1) to seek information to help establish St. James' guilt; (2) to provide Suchta with information to bolster his version of events; and (3) to keep mum about the real facts associated with St. James' criminal case which led to him being arrested without probable cause. To support these allegations, St. James compares certain procedures in the City's Critical Incident Policy with various statements made by the City's officers to show that the City had a custom of not following the City's procedures to arrest victims only if there is probable cause. According to St. James, "[t]he shear number of [the City's] personnel involved in this process should require the City to stand trial on this claim." (*Id.* at 33.)

In response, the City asserts that there is no evidence in the record to support St. James' allegations that it has a custom or policy of arresting victims of police shootings. Rather, the City contends that it only arrests victims of police shootings when there is probable cause to support such an arrest, as evidenced by Keefe's and Turner's trial testimony and the fact that several state judges ruled that probable cause existed prior St. James' criminal trial.

Viewing the evidence in the light most favorable to St. James, the Court

finds that St. James has failed to identify a genuine issue of material fact to support

his *Monell* claim.  On the record before the Court, which includes the affidavit of a

former police officer and the affidavit of the City's Police Chief, there is no

evidence to support St. James' assertion that the City itself maintains a widespread

custom or policy of unconstitutional arrests of police shooting victims.  Rather, the

Court finds that the record supports the City's position that it has policies and

customs that call for officers to only arrest persons if there is sufficient probable

cause.  Accordingly, the Court grants the City's motion for summary judgment.

## III.    State Law Malicious Prosecution Claim (Count II)

St. James asserts a state-law cause of action for malicious prosecution against all

Defendants.  The elements of a claim for malicious prosecution are:  (1) the defendant's

initiation of criminal proceedings against the accused party without probable cause;

(2) malice; and (3) termination of the proceedings in favor of the accused party.  *Henry v.

City of Minneapolis*, 512 F. Supp. 293, 295 (D. Minn.1981) (citing *Jones v. Flaherty*, 165

N.W. 963 (Minn.1917); *Rosvall v. Provost*, 155 N.W.2d 900 (Minn. 1968); and *Martin v.

Cedar Lake Ice Co.*, 177 N.W. 631 (Minn. 1920)).  Defendants respond that they are

entitled to summary judgment on Count II because they are protected by the defense of

official immunity because St. James cannot establish that any defendant acted with

malice.

Under Minnesota law, public officials are automatically entitled to official

immunity from state law claims when their duties require the exercise of discretion, so

17

long as the officer is not guilty of a willful or malicious wrong. *Johnson v. Morris*, 453

N.W.2d 31, 41-42 (Minn.1990); *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.

1988). Thus, to determine whether official immunity is available in any given context

requires a determination of whether the alleged acts were discretionary or ministerial and

whether the alleged acts were malicious or willful. *Davis v. County of Hennepin*, 559

N.W.2d 117, 122 (Minn. Ct. App. 1997).

Malice, in the official immunity context, means intentionally committing an act

that the official has reason to believe is legally prohibited. This is an objective inquiry

that examines the legal reasonableness of an official's actions. *State by Beaulieu v. City*

*of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). An officer does not commit a

willful and malicious wrong unless the officer relies on information that the officer knows

to be false. *Johnson v. County of Dakota*, 510 N.W.2d 237, 240 (Minn. Ct. App. 1994).

To overcome a defense based on official immunity, a plaintiff cannot rely on "bare

allegations of malice"; rather, a plaintiff must present specific facts evidencing bad faith.

*Harlow*, 457 U.S. at 817.

Viewing the evidence in the light most favorable to St. James, as discussed above

with respect to the neutral investigation, the Court finds that there are genuine issues of

material fact with respect to the issue of malice that preclude summary judgment on this

claim. Given this, the Court denies Defendants' motion with respect to Count II.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

18

1.     Defendants' Motion for Partial Summary Judgment (Doc. No. 51) is

**GRANTED IN PART AND DENIED IN PART**, as follows:

a.     Defendants' Motion with respect to the stand-alone claim based on the substantive due process claim against Suchta contained in Count I of the First Amended Complaint is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

b.     Defendants' Motion with respect to the joint claim against Suchta, Rouner, and Folkens contained in Count I of the First Amended Complaint is **GRANTED** insofar as it relates to the claim for conspiracy, and the claim is **DISMISSED WITH PREJUDICE**.  Defendants' Motion with respect to the joint claim against Suchta, Rouner, and Folkens contained in Count I of the First Amended Complaint is **DENIED** insofar as it relates to the claim for a neutral investigation.

c.     Defendants' Motion with respect to the claim against the City of Minneapolis and the Minneapolis Police Department contained in Count I of the First Amended Complaint is **GRANTED,** and the claim is **DISMISSED WITH PREJUDICE**.

d.     Defendants' Motion with respect to the Count II of the First Amended Complaint is **DENIED.**

2.     The claims against John Does 1-5 contained in Counts I and II of the First Amended Complaint are **DISMISSED WITH PREJUDICE**.

3.     The claims against Sergeant Keefe contained in Counts I and II of the First

Amended Complaint are **DISMISSED WITH PREJUDICE**.


Dated:  October 2, 2007              s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court